IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| KEITH J. MITAN,<br><br>　　　Plaintiff,<br><br><br><br><br>　　　vs.<br><br><br>BRCSLC, INC., a Utah Corporation,<br><br>　　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br><br>Case No. 2:09-CV-363 |

This matter is before the Court on Defendant's Motion for Summary Judgment.[1]  For the

reasons stated below the Court will grant the Motion.

## I. BACKGROUND

On August 13, 2005, Ed Pendarvis—who is not a party to this action—sent what appears

to have been a mass email to business brokers titled *"Mitan Alert!!!"* ("Pendarvis Letter").

Defendant alleges that Pendarvis, as the founder of the "largest business brokerage operation in

the world" and a published author on the brokerage industry, is recognized as an expert in the

---

[1]Docket No. 44.

1

business brokerage field.[2]  The letter warned potential investors of fraudulent investment activities by Plaintiff and his immediate family and included photographs of the Mitans.[3]  Defendant is a business broker.[4]  In 2006, the independent contractor charged with developing and maintaining Defendant's website posted an article based on the Pendarvis letter.  Defendant alleges that it only gave approval for the independent contractor to attach a link to the Pendarvis Letter, which was apparently posted on another location of the Internet.  However, an article titled *Business Scams Continue To Spread* was posted on Defendant's website.  It stated in full:

> Yet another business scam affecting buyers/sellers and brokers has surfaced recently on the east coast of the US.  Including another report regarding the Mitan family (including Kenneth, Keith J, and Teresa) for allegedly attempting to acquire a business through a Boca Raton, South Florida office under the alias of "Ken Mitchell" who is a senior buyer for [redacted] and whose U.S. corporate address is [redacted].
>
> Fortunately, the office owner in this case became suspicious and called the business broker and they were able to forewarn the seller not to proceed with the contemplated stock sale.  The Mitans' modus operandi is to acquire a business that is for sale through the purchase of the company's stock.  They will make an initial down payment (roughly equivalent to the cash on hand in the business), gain control of the company assets, immediately factor the businesses' receivables, terminate the employees (many with bad checks as severance), and default on any seller financed promissory notes within a few months.  Many of the employees of the businesses the Mitans have purchased have found that withholdings for Federal tax, State tax, Social Security, medical insurance and other items were never forwarded to the appropriate government entities.  Most of the suppliers to the companies were either never paid or were paid with bad checks.  Additionally, deposits were received from customers and orders were never shipped (and deposits never returned).  In many instances, the Mitan's will work to close a transaction with your seller without your involvement!

---

[2] Docket No. 45, at 3 n.1.  Plaintiff has not challenged Defendant's description of Pendarvis.

[3] *Id.* at Ex. 2.

[4] *Id.* at 12.

DO NOT LET THIS HAPPEN!

You can find a list of the entities controlled by the Mitans, photographs, various aliases (including "John Smith, John Adams Smith, and John Adams"), and summaries of their alleged criminal activities at http://intranet. sunbeltnetwork.com/resources/mitan.jsp. If someone calls your office on a listing wanting to know if they can acquire the stock of a Main Street business, please recognize it as a warning and proceed with caution. These people prey on motivated sellers. BE ALERT!!!

Our thanks to Ed Pendarvis of the Sunbelt Network for this information.[5]

The parties dispute the publication date of this article. Defendant claims it was published on or about May 4, 2006, and supports this claim with a citation to a public internet archiving service.[6] Plaintiff questions the reliability of the archiving service.[7] He claims the date of publication was November 13, 2006, but provides no evidentiary support for this date of publication other than his own affidavit.[8]

On August 10, 2007, Plaintiff filed a defamation action in the Federal District Court of South Carolina against BRCSLC, Inc., Pendarvis, and two Deleware companies. The case against BRCSLC, Inc. was dismissed due to lack of jurisdiction on April 30, 2008, and Plaintiff filed the current action in this Court on April 24, 2009. Defendant now moves for summary judgment.

---

[5]Docket No. 45, at Ex. 4.

[6]Docket No. 45, at 4, n.3.

[7]Docket No. 55, at 4-5.

[8]*Id.* at 3 & Ex. A.

## II. DISCUSSION

Defendant argues that Summary Judgment is proper because: (1) the claim is barred by the statute of limitations, (2) Defendant did not publish the statements, (3) the statements were true, (4) there is no evidence of malice, and malice is required because the statements were a matter of public interest, and (5) no damages can be proven. If any one of Defendant's arguments are valid then summary judgment should be entered against Plaintiff. The Court concludes that Defendant's statements are conditionally privileged under Utah law and that Plaintiff has not brought forward any evidence that would lead the Court to conclude the privilege has been lost. Consequently, the Court will grant Defendant's Motion.

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[9] In considering whether a genuine issue of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[10] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[11] Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its

---

[9]Fed. R. Civ. P. 56(c).

[10]See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[11]See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial."[12]

A.   PLAINTIFF FAILS TO MEET THE APPROPRIATE DEFAMATION STANDARD

Two issues are present regarding the defamation standard in this case.  First, which defamation standard is applicable, and second, does the application of that standard present a material issue of fact.  The Court concludes that the appropriate standard is that of a conditional privilege and no issue of material fact precludes the Court from finding that the statements are deserving of the privilege.

1.   THE UTAH DEFAMATION STANDARD WHEN THE PARTIES ARE BOTH PRIVATE FIGURES

As this is a diversity action, the Court applies the defamation law of the forum state which is Utah.[13]  This matter does not involve government action or a public figure. Consequently, the First Amendment implications, if any, are minimal, and the Court need not address in detail the rules established under *New York Times v. Sullivan* and its progeny.[14]

In order to state a valid claim for defamation Plaintiff must show: "(1) the defendant published statements concerning the plaintiff; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault;

---

[12]FED. R. CIV. P. 56(e)(2).

[13]*Safeco Ins. Co. of Am. v. Hilderbrand*, 602 F.3d 1159, 1163 (10th Cir. 2010) (citing *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).

[14]*See Paul v. Davis*, 424 U.S. 693, 697-98 (1976); *Ferguson v. Williams & Hunt, Inc.*, 221 P.3d 205, 214 (Utah 2009).

and (5) the statement resulted in damages."[15]  If Plaintiff cannot meet the damages requirement,

he may still state a valid claim if he can satisfy the requirements of defamation per se, namely the

alleged defamatory statement must either: charge criminal conduct; impute a loathsome disease;

reflect on the fitness of the person to engage in his business, trade or profession or hold some

office; or charge unchastity of a woman.[16]

The Utah Supreme Court recently addressed defamation standards in actions between two

private individuals in *Ferguson v. Williams & Hunt, Inc.*[17]  In *Ferguson*, the law firm of Williams

& Hunt terminated Ferguson because the partners believed he had been overbilling.  The firm

also informed a client that it could no longer trust Ferguson's billable time.  Ferguson filed a

defamation action against the firm.[18]  One of the issues in the case was whether the defamatory

communication was subject to a conditional privilege and, if so, what standard of proof applied.

The court laid out three potential situations where defamation occurs between two private

parties: (1) defamation regarding a purely private matter, (2) defamation regarding a matter of

public interest, and (3) defamation deserving of a conditional privilege.  A different standard of

proof applies to each situation.

---

[15]*Deary v. Godbe*, 992 P.2d 979, 983 (Utah 1999).

[16]*U.S.A. United Alliance, LLC v. Workers' Comp. Fund*, 213 P.3d 20, 26 (Utah Ct. App. 2009).

[17]221 P.3d 205 (Utah 2009).

[18]*Id.* at 205-11.

Defamation in a purely private matter occurs where all of the parties are private figures and there is no issue of public concern. The court left the issue undecided whether Utah law applies a strict liability standard or a negligence standard in purely private defamation.[19]

Defamation regarding a matter of public interest occurs when a case involves both "a private plaintiff *and* a public concern."[20] This category requires the standard of proof of negligence. The Utah courts have not provided a clear definition for what constitutes a matter of public concern and the examples found in Utah case law are limited.[21]

The final category is where a conditional privilege exists. The *Ferguson* Court explained this category in depth:

> A conditional privilege arises to protect a legitimate interest of the publisher, the recipient, or a third person. The privilege also extends to statements made to advance a legitimate common interest between the publisher and the recipient of the publication. . . . The conditional privilege also permits mistakes to be made; otherwise, there would be no need for the privilege.[22]

In determining whether a conditional privilege applies, a court should "balanc[e] the justification for the privilege against the individual's interests in reputation . . . ."[23]

---

[19]*Id.* at 214.

[20]*Id.* at 213 (emphasis in original).

[21]*See, e.g.*, *Ogden Bus Lines v. KSL, Inc.*, 551 P.2d 222, 226 (Utah 1976) (holding that "the safety of the transportation of school children" is a matter of public concern).

[22]*Ferguson*, 221 P.3d at 214 (quotation marks and citations omitted).

[23]*See id.*

Because a conditional privilege is conditional, certain acts by a defendant will cause the privilege to be lost. The *Ferguson* court clarified that this will occur if one of three things are shown by the plaintiff. First, when a defendant "made a defamatory statement knowing it to be false."[24] For a plaintiff to meet her burden of proof, she "must present evidence that shows the defendant [knew] the defamatory statement [was] untrue."[25] Second, when a defendant "acted in reckless disregard as to [the statement's] falsity."[26] To show such a reckless disregard a plaintiff must show (1) the defendant subjectively believed the defamatory statement to be true and (2) objectively the belief was inherently improbable or obviously doubtful.[27] Third, the court reaffirmed common law means of losing the privilege, such as "excessive publication or common law malice."[28] The court defined common law malice as "an improper motive of spite or ill will,"[29] which is distinct from the malice standard of *New York Times Co. v. Sullivan.*[30]

---

[24]*Id.* at 215.

[25]*Id.*

[26]*Id.* The Court notes that these standards of knowing falsity or reckless disregard of truthfulness may often be referred to as actual malice in defamation actions. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); Black's Law Dictionary 968 (7th ed. 1999). However, as the *Ferguson* Court did not use that term, neither will this Court.

[27]*Id.*

[28]*Id.* at 214-15.

[29]*Ferguson*, 221 P.3d at 212 n.1.

[30]376 U.S. at 279-80.

2.   THE STATEMENTS ARE CONDITIONALLY PRIVILEGED, AND THE
     PRIVILEGE HAS NOT BEEN LOST

In making a determination based on conditional privilege, the Court must first determine

if the statements at issue are deserving of the conditional privilege.  Then the Court must address

whether Defendant's actions caused it to lose the privilege. The Court concludes that the

statements are deserving of the privilege and that Defendant has not lost the conditional

privilege.

The statements in the article published on Defendant's website are deserving of the

conditional privilege described in *Ferguson*.  Defendant is a business broker and maintains a

website.  Those who view the website are likely interested in various business dealings.  The

article warned of possible fraudulent business dealings.  Consequently, the statements in the

article "protect a legitimate interest of the publisher, the recipient, or a third person"[31] because

both Defendant and the website's viewers have a legitimate interest in avoiding fraudulent

investment schemes.  Furthermore, "the privilege also extends to statements made to advance a

legitimate common interest between the publisher and the recipient of the publication."[32]

Defendant and the viewers of its website may also share a common interest in avoiding

fraudulent schemes and protecting others from entering into such schemes.

Finally, in balancing this strong interest in preventing fraud against Plaintiff's interest in

reputation, the Court finds the interest in preventing fraud outweighs Plaintiff's interest in

---

[31]*Ferguson*, 221 P.3d at 214.

[32]*Id.*

protecting his reputation.  Plaintiff has presented no evidence that his reputation was damaged. The only evidence on this topic was presented by Defendant and concerns Defendant's article being used in a court proceeding against Plaintiff while acting as counsel to his mother. However, Plaintiff admits that the issue in that proceeding became moot, as he was disqualified from representing his mother because he was suspended from practicing law due to actions unrelated to the defamatory statements at issue in this matter.[33]  In fact, in his memorandum Plaintiff argued that damages need not be proven and thus did not claim he has suffered damages to his reputation.  Consequently, his interest in reputation is minimal on this issue and is outweighed by Defendant's interest in informing the readers of its website of fraudulent schemes to which they may fall prey.

Plaintiff does not address the standard of conditional privilege in his Memorandum in Opposition.  He does allege in his Complaint that the statements in Defendant's article "were made in an unprivileged communication to the third parties."[34]  However, at the summary judgment stage Plaintiff must produce more than mere allegations.[35]  Neither his Memorandum nor the attached exhibits provide any evidence to refute a finding that Defendant and the viewers of its website have a legitimate interest in preventing the types of activities described in the article at issue in this case.

---

[33]Docket No. 45, at 13 & Ex 2.

[34]Docket No. 1, at 2.

[35]Fed. R. Civ. P. 56(e)(2).

Based on these considerations, the Court concludes that the statements in the article are conditionally privileged.

Next, the Court must consider whether the privilege has been lost due to Defendant's actions. As laid out above, the conditional privilege may be lost if it can be shown that Defendant knew the statements were false or acted recklessly regarding their truthfulness, or alternatively, if other common law rules apply, such as excessive publication or malice.

Plaintiff has made no showing that could lead the Court to conclude that the conditional privilege has been lost. Plaintiff's Memorandum in Opposition does not address the issue other than to briefly argue that because there is no matter of public interest involved, he need not meet a higher standard of proof. His Complaint alleges that Defendant "knew that such statements were false, or acted in reckless disregard of their truth or falsity."[36] However, Plaintiff provides nothing to support this allegation. He was asked in his deposition what information he relied on in making this particular claim. The Court does not have the entire transcript of this discussion, but the portion it does have shows that Defendant avoided answering the question, stating he needed to conduct further discovery, and eventually argued "[t]he facts are false," which is not helpful in determining whether Defendant knew this or acted recklessly regarding such alleged falsity.[37]

---

[36]Docket No. 1, at 2.

[37]Docket 45, at Ex. 2, p. 4. The Court restates that it does not have Plaintiff's entire answer on this matter, but Plaintiff had the duty to bring forward evidence showing a material issue of fact and has not done so on this topic.

In viewing the facts in a light most favorable to Plaintiff, there is no evidence before the Court to demonstrate that Defendant knew the statements were false. First, Defendant could not have gained knowledge of the statements falsity directly from Plaintiff as it is undisputed that the parties had no interactions prior to this litigation and that there was no personal relationship between Plaintiff and a representative of Defendant.[38] Second, no evidence has been presented that shows the article was refuted by any publication. Third, there is no evidence to indicate that Pendarvis ever indicated the statements were not true. In fact, the original South Carolina lawsuit named Pendarvis as a Defendant. In sum, no evidence has been presented to show that the facts were false and that Defendant was aware of the alleged falsity. Thus, the Court finds that the conditional privilege is not lost on this ground.

Also, in viewing the facts in a light most favorable to Plaintiff, there is no evidence that demonstrates that Defendant acted recklessly in regards to the truthfulness of the statements. Defendant has produced evidence that its article was based solely on information from a trusted source. Plaintiff has not presented any evidence to the contrary. For example, there is no evidence questioning the trustworthiness of the Pendarvis letter, nor is there any evidence of information Defendant should have been aware of which would refute the statements in its article. The Court finds that the conditional privilege is not lost due to any alleged recklessness by Defendant.

---

[38] Docket No. 55, at 1 & Ex. A, Affidavit of Keith J. Mitan.

The parties do not address other common law means of losing the privilege. However, the discussion above demonstrates that neither excessive publication nor common law malice are present. The evidence before the Court does not support a finding that the privilege should be lost due to common law factors.

In conclusion, the Court finds that the statements in Defendant's article are conditionally privileged because they clearly address an issue in which both Defendant and viewers of its website have a legitimate interest. The facts in no way support Plaintiff's claims that the privilege should be lost. Thus, even if the statements contain falsities, the privilege shields Defendant from liability.

## B. THE COURT NEED NOT ADDRESS DEFENDANT'S OTHER ARGUMENTS

Defendant argues that summary judgment is proper on several grounds, each of which would require extensive analysis by the Court. The principle of judicial economy directs the Court to only address those arguments necessary to rule on Defendant's Motion. Because summary judgment is proper based on a conditional privilege, the Court need not address Defendant's arguments regarding statute of limitations, truthfulness, or damages.

## III. CONCLUSION

Under Utah law summary judgment is proper because the statements are conditionally privileged and that privilege has not been lost. Consequently, the Court need not address the other arguments Defendant makes to support summary judgement. It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 44) is granted. The Clerk of the Court is instructed to enter judgment in favor of Defendant and against Plaintiff and close this case.

DATED   October 13, 2010.

BY THE COURT:

_____

TED STEWART
United States District Judge